Patients, we'll call the next case. Case number 09-2202, Erasmo Palacios v. City of Chicago, Inglewood. All right, on behalf of the appellant. Good morning, I'm Sonny Benogas on behalf of the plaintiff's appellant, Erasmo Palacios. Judge, the judge is justice. The basic issue here is very simple. Does the third amended complaint state a cause of action? That's the way I view it. Let me ask you a question before you get into it. Certainly. It appears in your brief, when I say appears, it's there, that you're saying, in effect, that there's a violation of due process here because of the hearing officers are paid by the City of Chicago. No. All right, well, that's what it looks like. That's wrong. All right. That's incorrect. That's not what we're saying. But you're not saying that there's a due process violation because you can't get a jury? You're not saying that there's a due process problem because the judge did not allow you to make an offer of proof? You're not saying that there's a due process violation because the ordinance itself says, if you even respond by inquiring about something, that that's a violation of the law, where this state statute doesn't say that? That's not what we're saying. You don't find any of those due process? No, Judge. The third amended complaint is what our allegation is. Those things may or may not be. But that's not our allegation. Before you go and continue, let me ask you this very simple question. You have a very similar case regarding constitutional violations pending in federal court, right? No, Judge. It's the same. Right, it's the same. Right, but it is pending. It's just not going forward. It's been staying for over two years. You understand that if you go forward here in the state court and lose on those pending federal civil rights actions, you're going to be, it is res judicata. It certainly may be, Judge. And that's the argument I made to Judge Castillo. And the city made the exact same. Justice Castillo didn't force you to file these actions in here. No. He forced you to go through the administrative proceeding. What Justice Castillo ruled was. You have an administrative law remedy. The state. You have to complete it. The state proceeding, Justice Castillo ruled on February 20th, 2008, page seven of our brief, which is, I'm sorry, it's in paragraph 10 of our claims of the second amendment and third amendment complaint. Exactly what Justice Castillo ruled. Quote, the state proceeding affords plaintiff an adequate opportunity to raise a constitutional claim. Right. If plaintiffs wish to raise a due process claim regarding how the impoundment proceedings are conducted, he could do so in the context of his administrative review action. B, he also said, Illinois has a liberal policy in favor of permitting amendments to proceedings which were made at any time before a judgment, final judgment, on just and reasonable terms, even if the amendment changes the cause of action or defense or adds new causes of action or defenses. He was right about that, wasn't he? Absolutely. Except there's no obligation that you go forward on a 1983 action in state court, is there? I mean, even though. We wanted to bring a 1983 action. That's why we're in federal court. Right. The city said, the city's brief, the appropriate place for plaintiff to address his alleged deficiencies in the administrative hearing is in the state of Illinois with his appeal to the circuit court of Cook County. That's the state's reply in support of their motion. That's in our amended complaint. The state also said, in our amended complaint, this alleged bias of the hearing officers and the procedure in general is an issue that plaintiff must raise to the state court through his appeal of the administrative hearing. So we took everybody at their word and came over here and did that. And now everybody says, you can't do that. Not everybody. That's why you're here. We haven't said anything yet. We haven't said anything. So far, everybody. OK. Now, where is their bias? Where is your claim of bias? Judge, our claim of bias is in paragraph? Paragraph 12 of the third amended complaint. 13. It says, hearing officers, one of whom is- That's paragraph 12. I'm sorry. Because the number of hours they receive compensation for- This is at the very heart of your case. Absolutely, Judge. Because the number of hours they receive compensation for and the continuation of that relationship are influenced by the decisions they make that are in favor of the city. And the amount of revenue received- Now, where do you get that from? We've alleged it. That's alleged. An allegation. We've alleged it. I believe that I, in good faith, will be able to prove that. I want to take discovery on that. I can't prove it until I take discovery. I've alleged it. OK? Now, why don't you have alleged that before the hearing officer when you first appeared? Because the hearing officer's his own bias. Oh, I know that. But you could have alleged it. I don't think we could have. Oh, yes, you could have. I don't think we could have. Even though they can't resolve the constitutional issue in that department, they might try. You have the perfect right to raise it at the earliest possible moment. And the earliest possible moment would have been before the hearing officer. The first answer is, if I might give two parts- I know. You're going to give me a case that says you can still raise it in the circuit court later. That's correct. But that's my second point. That's my second point. The first- And you've got a case on your side on that one. The first part really is, in effect, we're disqualifying all the hearing officers. So who would have heard that issue? Well, the point was is that having not raised it before them, you didn't give them an opportunity to say, You know, you're right. I'm going to recuse myself from this case because I've been told by my superior that if I don't find in favor of the city in eight out of the ten cases that I hear, I'm not going to have a job next month. Somebody might have been candid enough to say that on the record, and you would have won right there. Judge, I can't answer that specific question. I did not represent Mr. Palacios. But that's at the heart of your third amended complaint. That is correct. And I just want to reiterate, it's not what you said, Justice Gordon. It's not the mere fact that they're paid. That case has already been decided. That's not our allegation. Absolutely not. Our allegation is the hearing officers are informed in various ways that you better find for us or you won't get work. Now, that's a big difference. And that's the Moore v. Monrovia of Ohio case. What was Chuck Argonza's rationale for denying you the opportunity to file that third amended complaint? I wish I knew that. He said something. What did he say? He said basically that the first time in the second amended complaint. Now, forget about the second amended complaint. The only one that's in front of us is, that's the only thing you've appealed is the denial of the right to file the third. I understand, but you're asking me why the judge did what he did, and I want to go back and give you his history. What did he say? In the second amended complaint, he said even though it says all of those things, he ruled it was an administrative review. Even though clearly count one was an administrative review, he pushed count two into it. And that's what he did in this case. He didn't want to allow us discovery to prove our case. Now, forget about the discovery issue. He didn't allow you to file the complaint. He said it didn't state a cause of action. That's what he said. So, let me ask you. Is that in the record where he said that paragraph 12 didn't state a cause of action? I can understand why you have a problem with 13 and 14. They're conclusory. I believe that. I'm talking about 12. I believe that. Yes, judge. I believe that's what he said. I don't believe. I'm trying to remember now. There's one date where there's a missing transcript, and I forgot if that's the date. But everybody agrees, the city agrees, that Judge Sconza ruled that the third amended complaint did not state a cause of action. Cause of action? That's what I said. That's why I started with my appeal. This is a very simple thing. So, how do you get around those cases that hold that you can't have a fishing excursion on discovery? Well, Judge, what's a fishing excursion? Until I get the discovery, how do I know it's fishing? I believe, I believe as an officer of the court, that I have sufficient information. Now, I need to get that. I need to prove that information from them. But just because I asked for documents doesn't mean I don't know certain things, doesn't mean people haven't told me certain things. I have said that that's an allegation on reasonable information. It shouldn't have been very simple. If you don't like their process over there, just file a jury demand. Then you have a constitutional issue before us that we can decide. The judge would have denied that. I said, but then we have a constitutional issue here that we can decide. But the issue, the judge would have said the same thing. The judge would have said, you don't have a right to a trial because I'm ruling your complaint doesn't state a cause of action. I wouldn't have gotten to trial anyway. No. He would have thrown out the case. The judge threw out the case on a pleading issue. That the pleading is insufficient. I understand what he did. It didn't have anything to do with discovery denial, did it? No, he already denied that the first time around. But that's where we were going, certainly. That's where we were going. But you didn't get there with it. Of course not. He circuited you by denying your right to file the third amendment. That is correct. As he had denied it. He did deny discovery on the second amendment complaint. And that's why we went back and just said, look, we're going to make it one million percent clear. We're going to spell it out in raster terms. But paragraph 12 in the third amendment complaint is clearer than paragraph 12 in the second amendment. Right. We're here because I made it clearer. I wanted to make it clear. I don't know whether we would have appealed from the second. But I wanted to make certain because I felt that the judge was not going to allow us to go forward on that. So I made it as clear as I could be. And that's where I think we are here. So if you want to talk, I don't know if you want to discuss a little bit the administrative review portions of this case, simply Mr. Palacios is sitting in a car. I want to ask you regarding the merits, regarding what the, Mr. Palacios was alleged, he was alleged, the seizure of the vehicle was pursuant to section 8-8-060. But in that section, there are a variety of possible bases. Solicitation of a custody. Right. And what, under what, what are the elements of that charge? Or what notice did he get that said he violated D-1 or F-1? He got a notice that his car was being impounded because of that. Right. But what did he violate? Did he violate D-1? Did he violate F under 8-8-060? I think that's changed a little bit in the state's position there, in the city's position. But I'm asking you what the record shows that he received notice of having violated. And maybe you can't answer that right now. Perhaps you can answer it in your rebuttal and you'll have a chance to look at it. But I understand that he was charged with solicitation of a prostitution. Right. And was that in accordance with the criminal code? No. Well, the elements of solicitation. Of course. It's a municipal ordinance. It's an ordinance. It's an ordinance, but it makes reference to what was formally called Chapter 38, the criminal code of 1961. In effect, he offered someone money for sex. I understand what the gist of it is. I'm asking you what did the state have to prove the elements of the criminal, underlying criminal charge in order to prove him guilty of the violation of the ordinance? I don't think there's a significant difference between the two, so I would say the answer is yes. Okay. The answer is yes. He's sitting in his car with his wife. His daughter goes to get coffee at a restaurant. They had just gotten breakfast out of there. They're sitting in their car. The officer walks up to him because his wife had said to Mr. Plassius, that woman is waving her arms on the street. She looks like she's in trouble. So he rolls down his window. And she approaches him. And she approaches him. There's a dispute as to whether or not he humped his car or humped his horn. She says yes. The backup officer says no. But he's sitting in his car with his wife while his daughter was getting coffee, and allegedly he offered her money for sex. Well, let's go into the details because she approaches the car. She says, I'm a prostitute or something like that. I'm a whore. Okay, right. And here are my offerings. Here's my price schedule. And he says, so at the point that she gives him that information, has the violation occurred? Based on your understanding of the administrative record that we have before. Well, it can't be a violation until you say so. So your answer is no. Right. All right. So then the conversation continues. Right. And he asks her, are you here all the time? No. First she says, what? All right. And then she reiterated. And that didn't add much to our conversation here. Right. And then he says, no, no, no. And then she asked him, is that your wife? And he says he was. And he starts rolling out. Does that help? Well, the point is, when did the violation of the ordinance occur? It never did. Well, no, but it did. No, it didn't. Well, the administrative hearing officer found a violation. That's correct. And the question I have for you is, when did the hearing officer say, this is when the violation occurred? Did he say it happened when she made the offer or when he said what? Or did it happen when he said, do you work here all the time? Or did it happen when, I'll be back later? I would assume, since I'm not the state's attorney, I'm not the city and I can't tell you, but I would assume it has to be when he allegedly says, which we dispute, I'll come back later. It has to be. Until he says something affirmative, he hasn't agreed. And under the elements of the criminal code, what, how does I'll be back later satisfy what is required to prove solicitation? It doesn't. It doesn't. But as to your understanding of what the city's put forth, or as to your understanding of what the hearing officer determined. The hearing officer doesn't have to say, based on X, Y, and Z, or now I've heard this, I find this. Here's the other curious part of what the hearing officer said. Hearing officer hears the case, and of course the city's the plaintiff. The city bears the burden of coming forward with sufficient evidence. Then the defendant, Mr. Palacios, presents his version. And the hearing officer says, you know, you could have brought in your wife and your daughter. And there's this adage that, you know, you don't prove cases based on the weaknesses of the defendant's case. You prove the case based on the strength of the plaintiff's case. And I understand that an absent witness may have, may, you can infer certain things, you can infer negativity based on the strength of your case. But I've never seen a case that says you can infer the absence of defendant's witnesses to prove that the defendant violated the statute. Not only is that correct, Judge, but until later, or until that hearing, we didn't know that the officer had secret files that she made her own notes that didn't make their way into the police report, which said all these things about the daughter, the wife. There would be no reason to bring them in if the conversation is between them and the wife doesn't speak sufficient English. There's no reason to do that. And I think you're right, Judge. But just, with the wife sitting there, the question is... But it did look like the hearing officer... Absolutely. ...shifted the burden to the defendant and said, hey, you had to bring in the witnesses that could have resolved this dispute. He absolutely said that. Yeah, but what's the standard here? Is this preponderance? Yes. Okay. It's a simple matter. The fines are $13,000 in this case because of this file. So it's not a $100 ticket. Thank you, Judge. Thank you. You'll get a couple minutes. Thank you. All right. On behalf of the city. Oh, incidentally, in the interest of full disclosure, I should point out that Mr. Okas and I are in the same baseball fantasy league, along with I don't know how many other people. I appreciate that disclosure. Okay. And you're not seeking any action based on that, are you? No. We're actually adversaries. Good morning, Your Honors. Christina White, I represent the... I'm sorry, your last name? White, just like the color. White. Okay. You point out that there's no record of how the trial judge ruled on his Third Amendment complaint. You did supplement the record, but he doesn't explain why he denied filing on the Third Amendment complaint. Then you use the Fooch argument. Is that correct? Is that your basic position? Yes. That we really... There's not enough in this record for us to make a determination as to whether or not the trial judge abused his discretion in denying the Third Amendment complaint because we don't know why he did. But the Fooch argument assumes that there's a transcript of the proceedings that would explain it. And your position isn't that the judge, during the course of his decision, denying leave to file the Third Amendment complaint, that he, in fact, explained his ruling. Are you? You're not taking that position, are you? Our position is that there is no transcript. Right. We know that there is no transcript. Did the judge, in the course of issuing his decision, denying the plaintiff's leave to file a Third Amendment complaint, did he explain his ruling on the record? He did explain his ruling. There was a court order present. However, plaintiff has not included a copy of that transcript in the record. And that's why, here at appellate review, we have nothing to review to know how he exercised his discretion. Who prepared the order giving effect to the judge's ruling? I believe that the order was prepared by the city's attorney at that hearing. What's our standard of review for determining whether or not a complaint states a cause of action? Whether or not a complaint states a cause of action isn't a question of law. So our review then is? Your review of the denial of the motion for leave to file is? No, that is what I asked you. I said, what is our standard of review when we're reviewing a complaint to determine whether or not the complaint states a cause of action? De novo review. Is the complaint in the record? The Third Amendment complaint is in the record. Thank you. Do we need his ruling, I guess? The judge's ruling? If we have the complaint, why do we care what he thought? Because he could have denied leave to file the Third Amendment complaint for any number of reasons. Yeah, but as long as the party whose complaint was denied includes that complaint in the record, why do we care? In our review of a complaint and whether it states a cause of action, why do we care what the trial judge did or didn't do? Because he could have had any number of reasons. Yeah, but why do we care what they are? But if you're saying that one of those reasons would overcome what Justice Cahill just pointed out, that it doesn't make a difference under our de novo review, you're certainly free to tell us what that reason is right now. Right now. And convince us. But otherwise, we rule based on the complaint. And that's the distinction between the sufficiency to state a claim argument that we've raised on de novo review and the math and the Well, I bring it up because you suggested that we could fooch this case out, fooch being fooch versus whoever he is. Am I pronouncing that right, incidentally? I think so. That's how I would pronounce it. But I don't really follow track of your argument because that would assume that the standard of review for determining whether or not this complaint states a cause of action was the trial judge's abuse of discretion and really we're reviewing his decision rather than whether the complaint states a cause of action. Right, we're reviewing his. That would be unusual for us. We don't normally do that. Well, I still stand behind my argument that it's something you could do in this case for those other reasons. But sticking to the failure to state a claim argument that is on de novo review, the plaintiff nonetheless failed to state the claim in this case. The law is clear here that where you make a claim of bias, you have to have something more than your mere allegations to overcome a presumption of partiality by the decision maker. And in this case, plaintiff's mere allegations aren't enough to overcome that presumption of bias. There's important reason that we have that rule. Well, if we didn't, then in every single case, someone could simply claim that the entire system was biased. There could sometimes be a very thin line between notice pleading and fact pleading. You don't think that paragraph 12 of the third amended complaint is sufficiently rooted in fact to survive a finding that it doesn't state a cause of action? I don't think that. Because it's conclusory. 13 and 14 are clearly conclusory. But I'm not so sure about 12. Are you saying that basically he needs someone, he needs a whistleblower, he needs somebody to come forward and say this is really what we do back here without the benefit of having an opportunity to interview people? He can certainly allege, and that's what he's done, allege a connection between the rulings and their employment. To take both questions, I think number 12 is conclusory. And I think so because there are things he could have pointed to absent bringing in his smoking gun witness from the city. You offered the hypothetical with Mr. Ogis that he could have asked his officer during the hearing. Indeed, that could have gone another way, too. He could have asked and the officer could have said, well, as a matter of fact, just twice last month I found. Or I've never found in favor of the car owner. Exactly. And in fact, I'm pretty sure that no matter how I rule today, they're going to call me again to come back and do this. And if he had asked any questions whatsoever, we'd be in a completely different position here today. Because there would be something on the record to indicate in some way his hearing was impartial. As it stands, there's absolutely nothing besides his conclusory allegation in paragraph 12. But absent such a hearing officer confessing such actions, you think Illinois pleading law requires more than what was set out in paragraph 12? I do think it does. He would obtain that. If he couldn't obtain it the way you've just laid out or the way Justice Gahill did, you think there are other ways to do that? Even absent the confession, he could have at least raised the issue as early as his administrative hearing. His argument that administrators are employed by the city is a matter of public record. So he knew this was the system from day one. And he waited until 13 months after his hearing to raise that issue. Well, maybe he didn't find out about it until later. We don't know that, do we? We don't know that. But what we do know is he could have found out and he didn't allege it at any point until 13 months after the fact. And that sets a bad precedent of allowing, especially in an administrative context, individuals to, if they get an ordinance violation, just go to court and take their shot and then wait and see if they lose. And if they do lose, then come back and challenge the entire administrative system. I do have a question regarding the merits. And I'm sure you've already anticipated the question. What if the car owner had said, I get paid on Friday, and this conversation occurs on Wednesday, I'll be back on Friday. Would that still be a solicitation? It depends on what was said before that. Well, given exactly what was said here, given exactly what was said here, he says that. He says, I get paid on Friday, I'll be back on Friday. Is that a violation of the ordinance? Given exactly what was said here, absolutely it is. If he'd said, I'll be back in two weeks, is that a violation of the ordinance? Given what was said here, absolutely. Is there any limit? Is there any limit? Could he have said, I'll be back next year, and you would still find a violation of the ordinance? Is there any limit? Given exactly what was said here. Given exactly what was said here. He had already violated the ordinance. That's the point. You're saying that the violation occurred prior to his saying, I'll be back. That's what you're saying. That we don't have to consider that at all. So tell me exactly, when did he violate the ordinance, excluding that statement about, I'll be back. He violated the ordinance a number of ways in this case. He violated it by the inquiry. Did he inquire it? Did he inquire it, or did she provide that information? She provided information, and he said, during the discussion, he asked, what are you doing out here? She asked, who is this woman? He said, don't pay any attention to her. So that conversation right there is a violation of the ordinance. The very next statements then were, what apps would be offered, and how much they'd be offered for. During that conversation is when he inquired. He asked, what do you do, and how much do you charge? Is that what you're saying? No, the record reflects that she told him that. And that in response, he said okay. So when he said okay, he violated the ordinance. Right, and in his discussion with her, yes, that was the inquiry. So okay, okay meaning, I heard you, or okay meaning, I'll take you up on it, or okay meaning, gotcha, or whatever other possible interpretation you can give to okay, but you're saying that the violation occurred at that point. Right, Judge. This isn't a case where he said, oh, excuse me, I didn't hear you, and that was the inquiry. I'm sure it's not a case that would make it clearer. But let me clarify as well. She didn't at that point say, come and get him, he just violated the ordinance. She didn't at that point say that, right? No, because he went further with his violation of the ordinance in that they worked out a price of exactly what was going to be paid for these apps. But you've already indicated that we really didn't need that other statement to violate the ordinance. The violation's already in effect. Exactly. All right. He didn't raise it in his brief, so I guess maybe we shouldn't really help him out here, but they nally-crossed this case, didn't they? They did nally-cross it. They nally-crossed the criminal proceedings. Correct. Because she didn't show up. Correct, that's what the record reflects. And they nally-crossed the prosecution. The prosecution nally-crossed the case. Why didn't they give him his car back right then and there? Because the impoundment proceedings are separate. I understand they are, but they are usually predicated upon a finding of an underlying finding of liability in the criminal case. They can be. However, the language of the municipal ordinance here states that... The language of the ordinance says they could proceed anyway, even if the case is nally-crossed. Right. It states that a violation of this ordinance or Here's the question. Let's say we could rule as a matter of law that had that misdemeanor solicitation offense gone forward that we could say that the facts alleged did not establish a violation of the ordinance. If we could say that as a matter of law does that kill does that is that fatal to the city's ordinance violation case? No, it's not. So you're saying that there really is no connection between the criminal solicitation offense and the ordinance violation charge? They're separate proceedings. Well, I understand they're separate proceedings. I'm talking about is the ordinance violation dependent on the solicitation charge? No, it's not. And in fact his behavior did violate the behavior prohibited in the ordinance. And that's why he was found liable So what connection is there between the ordinance and the criminal charge? What does he really have to do to sort of put him under that ordinance? Does he have to have a conversation with a prostitute? He doesn't have to really solicit a prostitute as the he doesn't have to do that. Well, certainly if he was found guilty that could be a predicate. But the subsection specifically tells him what he shouldn't have done when he was beckoned by a prostitute in a public place. And it tells him that he shouldn't inquire about it, he shouldn't engage in it, he shouldn't agree to engage in it, and he shouldn't negotiate for it. And he committed three of those prohibited acts here. And so his behavior here So at the moment any person who responds to the beckoning of a prostitute, I don't know that Coffey did any beckoning. She said she was beckoned. She heard the sound of a horn and went over. In fact, I would argue Beckoning usually means hailing somebody. Coffey didn't do any of that. Not that it's an issue here, they gnollied the prosecution anyway. Maybe that's why they gnollied him. Because they couldn't prove that she beckoned. I would argue that there are a few definitions of Is that what you mean? Well, beckoning an act of prostitution is what's prohibited in the But beckoning could occur simply by the way you appear? In this case that was part of her, the way that she beckoned, absolutely it was.    I'm sorry, I'm sorry, I'm sorry, I'm sorry, I'm sorry, Did he honk the horn? He was responding to the fact that she was dressed as a prostitute in an area known for prostitution. That's what she testified to. But anyway, I don't want to get into that. But let's get into this part, where you say basically what you appear to be saying is that the moment she identifies herself, in using her words, as a whore, anything, anything the car owner says after that moment can be interpreted as an inquiry? An inquiry, of course. So it is almost strict liability that if you respond to anybody who says hey, I'm a whore, I'm working and here are my prices, Nobody in this case has challenged the wording of the ordinance. That's the problem. If a newspaper reporter wanted to do a story on it and he asked the prostitute how much she charged, he'd be guilty under this ordinance, wouldn't he? You know, I don't think we need to go that far in this case because those aren't the facts here. And in fact, the statute talks about inquiring into the act of prostitution. So, you know, I don't think we're looking at a strict liability situation. So an inquiry could be something as innocuous as are you available for free? Well, that's certainly not what Mr. Blasios asked here. I know, but under the ordinance it's an inquiry, isn't it? It could be an inquiry. What if he were a medical or a someone who was interested in cutting down on AIDS? A sociologist doing research. A foreign AIDS individual. Have you been tested for AIDS? That would be enough. I can't speak to that. I know that didn't happen here and I certainly know Mr. Blasios hasn't raised that issue. Nobody's raised the issue except us. We have to have some entertaining aspects. Step to your guns. Good. All right. Mr. August. Final minute. There's no doubt that the trial court denied the leave to file the Third Amendment complaint. It's all over. Under 2615. And so the issue is simply as a matter of law, does it state a cause of action? Counsel, as Your Honor clearly said, could argue every single even ones that the judge didn't think of to dismiss the case. It's here. I think Justice Cahill made that clear. The question of when can he come back is how does I'll be back. I'll be back. Does he know anybody? What time she's going to be there? What day she works? That's ridiculous. Clearly, Judge, the ordinance violation is dependent to the forfeiture. You cannot just walk down the street and say, I like that car. Let's forfeit it. I don't know what the guy did, but I want that car. There has to be something. What the city is saying is nobody is allowed to talk to a known prostitute anymore. Anybody who talks to them, if it's your sister and you're driving her somewhere and you're talking to her and some officer says, I know that woman. She's a known prostitute. I'm going to forfeit that car. And just as an aside again, the officer is wearing her own clothes. She said that. I'm standing out here wearing my own clothes and we questioned her about that. And there's no case, Justices, that ever says one has to prove his case without discovery. This would be a first if that's allowed. Thank you very much. The case will be taken under advisement. Court is in recess.